**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000201
30-JUL-2015
08:16 AM**

NO. CAAP-13-0000201

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

REYNOLD T. KAMEKONA, Claimant-Appellee,
v.
CAST & CREW ENTERTAINMENT SERVICES, INC., Employer-Appellant,
and
ACCLAMATION INSURANCE MANAGEMENT SERVICES,
Insurance Adjuster-Appellant
and
ZURICH AMERICAN INSURANCE COMPANY,
Insurance Carrier-Appellant.

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2011-404(K))
(4-10-00557)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

Employer-Appellant Cast & Crew Entertainment Services, Inc., Insurance Carrier-Appellant Zurich American Insurance Company, and Insurance Adjuster-Appellant Acclamation Insurance Management Services (collectively, Employer) appeal from the Labor and Industrial Relations Appeals Board (LIRAB) Decision and Order (Decision and Order) filed on February 28, 2013. It is undisputed that Claimant-Appellee Reynold T. Kamekona (Kamekona) was injured at work on June 30, 2010, when he slipped and fell off the lift gate of a truck while loading equipment for Employer. The issue in this appeal is whether, in the Decision and Order, the LIRAB erred in concluding *inter alia* that there was a causal connection between the June 30, 2010 work injury and

a subsequent injury Kamekona sustained while washing his truck at home on July 17, 2010, and that Kamekona may be entitled to medical care, services and supplies beyond and after July 19, 2010.

Employer contends that the LIRAB erred in concluding that (1) Kamekona met the two-part test set forth in Diaz v. Oahu Sugar Co., 77 Hawai'i 152, 883 P.2d 73 (1994), for a compensable subsequent injury under the "direct and natural result" standard; (2) Kamekona did not sustain a subsequent intervening injury on July 17, 2010; and (3) Kamekona may be entitled to, and Employer liable for, medical care, services and supplies beyond and after July 19, 2010.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Employer's points of error as follows and affirm.

"Generally, a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." Diaz, 77 Hawai'i at 155, 883 P.2d at 76 (citation and quotation marks omitted).

> The application of this standard should not be determined by the length of time that has elapsed between the original and the subsequent injury. Thus, the test is: (1) whether any causal connection exists between the original and subsequent injury; and, if so, (2) whether the cause of the subsequent injury is attributable to some activity that would be customary in light of the claimant's condition.

Id. at 156, 883 P.2d at 77. "[I]n any proceeding on a claim for compensation due to an alleged compensable consequence of a work-related injury, HRS § 386-85 [(1993)] creates a presumption in favor of the claimant that the subsequent injury is causally related to the primary injury." Korsak v. Hawaii Permanente Med. Grp., 94 Hawai'i 297, 307, 12 P.3d 1238, 1248 (2000). "An employer can rebut the presumption by presenting substantial evidence that the injury is unrelated to employment." Davenport

v. City & Cnty. of Honolulu, 100 Hawai'i 297, 311, 59 P.3d 932, 946 (App. 2001) (quotation mark and citation omitted).

In this case, the LIRAB concluded that

> Applying Diaz to the facts of this case, the Board concludes that Claimant met the two-part direct and natural result standard. There was a causal connection between Claimant's original and subsequent injury and the subsequent injury was due to a routine minor activity that was customary in light of Claimant's condition.

Employer contends that the LIRAB's conclusion was in error because the LIRAB failed to provide any basis for a finding that Kamekona met the first prong of the Diaz test and the first prong must be met before reaching the second prong.[1] Employer contends that Kamekona does not meet the first prong of the Diaz test because any injury suffered on June 30, 2010 was completely rehabilitated by the time Kamekona injured himself washing his truck and developed new symptoms.

The LIRAB's conclusion that there was a causal connection between the original and subsequent injury presents a mixed question of fact and law because the conclusion is dependent upon the facts and circumstances of the particular case and we thus review the issue under the clearly erroneous standard. See Igawa v. Koa House Rest., 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001). "When mixed questions of law and fact are presented, an appellate court must give difference to the agency's expertise and experience in the particular field. The Court should not substitute its own judgment for that of the agency." Id. (citation, quotation marks and brackets omitted). The LIRAB's conclusion was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. "It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in

---

[1] Employer does not contend that Kamekona could not meet the second prong of the Diaz test, and presents no argument challenging the LIRAB's FOF 11 that washing his truck was a routine minor activity that was customary in light of Kamekona's condition. Employer's appeal focuses only on the first prong.

3

favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field." Moi v. State, Dep't of Pub. Safety, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008) (citation and block format omitted).

In its Decision and Order, the LIRAB found that Kamekona suffered "a work injury to his low back, among other areas," while at work on June 30, 2010. The LIRAB noted the testimony of Kamekona that even though he returned to work on July 16, 2010, he was not pain free at the time, but "continued to have back pain, which went down into his leg." Kamekona testified that his pain increased when he did things like tie his shoes, and that after washing his truck on July 17, 2010, he felt increased low back pain that was similar to the pain he would feel while tying his shoes.

This testimony is, for the most part, consistent with Dr. Howard Keller's (Dr. Keller) notes from his series of examinations with Kamekona that were considered by the LIRAB. But, as Employer points out, Dr. Keller's notes indicate Kamekona had no radiating pain during his visits on July 10 and 13, 2010. Dr. Keller noted on July 7, 2010 that Kamekona initially presented with low back muscle tightness, walked with a haltering gait, and that the reflexes and straight leg tests were positive. Dr. Keller diagnosed an acute L.S. strain. Over two subsequent visits on July 10 and 13, 2010, Dr. Keller noted improvement in Kamekona, including full range of motion, a normal gait, no radiating pain, and approval of a return to full duty on July 17, 2010. However, according to Dr. Keller's notes,[2] Kamekona experienced more pain in his lower back with radiating pain into legs after washing his truck at home on July 17, 2010. In

_____

[2] Dr. Keller's notes provide that Kamekona exacerbated his injury while washing his truck on July 20, 2010. However, the LIRAB found that Kamekona was actually washing his truck on July 17, 2010.

4

Dr. Keller's opinion this was an exacerbation of the June 30, 2010 work injury.

The LIRAB credited this evidence over the report of Dr. Clifford Lau (Dr. Lau), who prepared his report at the request of Employer. Dr. Lau concluded that Kamekona aggravated a preexisting degenerative back injury on two separate occasions, once when he fell off the truck while at work on June 30, 2010, and then again while washing his truck on July 17, 2010, having rehabilitated in the time between the two incidents. However, Dr. Lau does not explain how the June 30, 2010 injury did not have a causal effect on the July 17, 2010 aggravation, especially when there is nothing in his report to demonstrate any recent back pain prior to June 30, 2010. We defer to the LIRAB's weighing of the evidence. From our review of the record, it was not clearly erroneous for the LIRAB to conclude that Kamekona's July 17, 2010 injury was casually connected to the prior June 30, 2010 injury.

Therefore, the LIRAB did not err in concluding that Kamekona may be entitled to, and Employer liable for, medical care, services and supplies beyond and after July 19, 2010.

IT IS HEREBY ORDERED that the Decision and Order filed on February 28, 2013, by the Labor and Industrial Relations Appeals Board is affirmed.

DATED: Honolulu, Hawai'i, July 30, 2015.

On the briefs:

Colette H. Gomoto
for Employer-Appellant,
Insurance Adjuster-Appellant,
and Insurance Carrier-Appellant

Wayne H. Mukaida
for Claimant-Appellee

Chief Judge

Associate Judge

Associate Judge

5